Good morning, your honors. May I reserve three minutes for rebuttal? Certainly. Manage your own time. May it please the court, my name is Susan Stevenson, with Pyle, Sims, Duncan, and Stevenson, and I represent the appellants herein, US Bancorp, US Bank National Association, and your honors, this case also involves the purchase of life insurance policies in the secondary market. The debtor, bankruptcy debtor, David Green, was the insured life who transferred three insurance policies to his wife in the months, approximately four months, before he filed a bankruptcy case. Mrs. Green, his wife, in turn sold the policies to the appellants. This sale also occurred before Mr. Green's bankruptcy filing, and Mrs. Green did not file bankruptcy. When the sale of the policies occurred, the policies were exempt without making a claim, fully exempt, as term life insurance policies under California law, without the necessity for making a claim. Well, let me ask you, don't, for something to be exempt, don't you have to disclose it to get the exemption? Your honor, under California law, in the months prior to the bankruptcy, the exemption was as a matter of right, as the code states, without the need to make a claim of any type. It's specifically in the statute that's California Code of Civil Procedure 704-100A, fully exempt. In addition, if your honor is speaking to the instance of after a bankruptcy filing, we have the recent U.S. Supreme Court case of Law v. Siegel, indicating that an exemption may only be denied on the explicit grounds stated in the code, and there is no explicit grounds. So did the code, on term policies, did the code anticipate secondary markets? Your honor, there is some indication that as far back as the 19-teens, there was some for life insurance. But it is a fact that generally, the code was probably enacted at a time when sales on the secondary market were very, very rare. Because, I mean, it was always like, and I didn't really even know that too much, that that existed, that, you know, if you have a term policy, it's not really, it's not worth anything until someone dies, essentially. That's generally the case. Policies came to be worth something, sadly, during the AIDS epidemic, when there were a number of younger individuals with term policies who were in effect at that time handed a death sentence, and desperately needed funds to survive. And the secondary market had its genesis in large scale at that time. Since then, it has moved beyond individuals who have essentially a short time to live, and in some instances, life settlements are of the sale in the secondary market of policies where the debtor is maybe healthy, but is older and has a large amount of life insurance on his or her life. I mean, there's several things that sort of go on here that have a little bit of a stench. And that's that the policies weren't listed in the debtor's bankruptcy schedules. Mr. Hamsey didn't disclose all the policies in his examination, and the settlement proceeds went into Mrs. Green's bank account, not Mr. Green's. And, you know, I think that kind of permeates all of this. And then there was also a condo, I guess, that that somehow doesn't deal with the policies, but it seems to be that it certainly seems to indicate the way they do business, and that it went to a stepchild, and then it went to some other person. And so there's a lot of things that just don't seem to be on the up and up here. Your Honor, the transfer of the policies, the policies themselves were gone as of the bankruptcy filing. They were no longer listed, the debtor as the owner. The owner had switched to first to Mrs. Green, the non-filing spouse, and then to the appellant herein. They were not listed as a transfer to outside of the ordinary course of business on debtor schedules, and we simply don't know why, despite what the appellant may argue about the fact that there was some sort of bad faith here. This was a 74-year-old man. He was in extreme financial problems because, you know, he had filed his bankruptcy. He was apparently in poor health because he died about four months. Yeah, Mrs. Green had waited and just listed those, and he had just died. She would have gotten a lot more money if she hadn't sold him to the bank, right? If Mrs. Green remained the beneficiary, she would have received $9 million under the policies, Your Honor. That's absolutely correct.  That's about $507,000. That's correct, Your Honor. Of course, in that instance, Mrs. Green would have had to pay the substantial life insurance premiums here. These premiums were very large, and there is really no indication. It's not in the record below. I have a question that I don't know the answer to, and I would like to know. It's not the facts of this case, but let's say hypothetically that those three, the policies had been listed as part of the estate, but that the premiums kept being made. The bankruptcy gets over, or let's say, and the bankruptcy is over, and a day later, then they go on the secondary market. Can the trustee reopen on that? If there was an exemption claim for the policies, if Mr. Green continued to hold the policies during his bankruptcy case, there's an applicable full exemption of the policies, and Mrs. Green is not a debtor in the bankruptcy. Let's say they know, though, that they're just going to wait until the bankruptcy is over, and a day later, then they go on the secondary market. There is nothing that prohibits that in California law. Right, except that the policies weren't disclosed, and there was an exemption requested from the bankruptcy court. The policies did not belong to Mr. Green and weren't required to be. . . Right, but your answer was they would be exempt under bankruptcy law, but you have to claim an exemption, and exemption is from property of the estate. That's correct, Your Honor. You do have to claim an exemption here. And the debtor did not. Because the property didn't belong to him at the time of his bankruptcy filing. He had transferred it. Right, so why is an exemption relevant? Here's why, Your Honor. We're talking about a fraudulent conveyance claim. A fraudulent conveyance claim requires that something of value be placed beyond the reach of creditors. At the time these policies were transferred to Mrs. Green and then on to appellants, they were exempt from levy under California law, absolutely exempt. The creditors could not touch those policies, so how were they possibly harmed by the transfer of them? Well, under bankruptcy law, if it's property of the estate, you can reach back and get it. So the question really is under 541A, does that constitute property of the estate? And 541 does not make an exception for the market value of life insurance policies, does it? 541 does not address the market value of life insurance policies. And so when it says the property of the estate consists of an equitable or legal interest, a debtor, wherever it may be, and the market value of life insurance policies is not carved out of that, why doesn't it fall within the property of the estate? Well, Your Honor, going back to the Supreme Court decisions in the early 1900s. Well, let me ask you before you get into those, why are those relevant because the Bankruptcy Act was repealed by the Bankruptcy Code of 78? Your Honor, there are cases, the Lettke's case is one, that address this issue and basically state that there was no one, Congress did not intend, when it enacted the Bankruptcy Code, to overrule the many years, decades of authority, Supreme Court authority, for the proposition that life insurance, term life insurance with no cash surrender value, does not come into the estate. And there's a very good reason for that. It's a safety net. It's the last safety net, oftentimes, that a family might have when they lose a critical wage earner. And traditionally, as observed earlier, the policies had really no value to anyone other than the beneficiary upon the death of the insured life. But there was really no secondary market. And certainly there was a mention of value in the cases, I grant you that, but there was no secondary market in the early teens when the Supreme Court was considering these cases. Well, interestingly enough, I would argue that there was a slight one in that one of the Supreme Court cases indicated that a doctor was transferred the full value of the policy, not just the cash surrender value in exchange for services provided to a dying debtor. But I think it is true that there was a minimal secondary market during the 19-teens. To this day, though, really no case, no case, Your Honor, that has been cited by the appellee in her brief identifies this issue as one that has been looked at and ruled upon by the courts, because this is a pretty new area of the law. And in California, the exemption, there is no distinction between a market value of the policy. It doesn't change the result. A term policy that lacks cash surrender value is exempt without making a claim. But it seems to me the whole premise of the distinction between cash surrender value and the beneficiary of a term is that in a no cash surrender situation, at least under the prior theory of the code, there was no present value to the policy. And here there's developed a market where there is a present value to the policy. It's a market value situation. That's correct. It is a market value situation. However, if you go back to the fact, could there be a fraudulent transfer of an asset which was fully exempt under California law? California law, the California Code of Civil Procedure 704-100A simply does not make an exception for policies with a market value. There's no treatment distinction in the California Code of Civil Procedure, and there's been no case treating a policy differently because it had a market value as opposed to a cash surrender value. But the fraudulent transfer theory was not brought under California law. It was brought under the bankruptcy code. Correct. But the bankruptcy code 548 requires either actual fraud, which is taking something that would otherwise be available to creditors and putting it deliberately beyond their reach. Here the policy was beyond the reach of creditors when it was transferred. Or 548 requires constructive fraud, which essentially boils down to a diminution of assets available to pay creditors. And here no creditor was harmed or lost a dollar when these policies were sold on the secondary market or when the debtor transferred the policies in the first instance to his wife. No creditor was harmed because there was no diminution in value of an asset a creditor could look to for payment at that point in time. One thing that I found to be kind of unusual was that the bankruptcy court provided no reasons for its decision. And was the bankruptcy court a little irritated with the trustee? Is there some history here that is, you know, there's no reasons for anything here. Your Honor, both the trustee and the defendants submitted proposed findings of fact and conclusions of law. So if there was irritation, which I did not sense at the time, it was on equal to both sides because neither side's proposed findings of fact and conclusions of law were adopted by the bankruptcy court, nor did he issue any other findings of fact or conclusions of law here. Your Honor, three minutes to honor reserve. Yes, thank you, Your Honor. Good morning, Your Honors. Sean Coughlin for Elizabeth Iveson, Chapter 7 trustee. May it please the Court. Well, of course, the fundamental issue here is whether Mr. Green's ownership interest and equity interest in these life insurance policies was an interest of the debtor in property pursuant to Bankruptcy Code Section 548. So why isn't it just up to the Congress to amend the Bankruptcy Code to make clear that the market value of term life insurances is not covered by any exemption for unmatured life insurance contract owned by the debtor? Well, I think that goes to Judge Thomas' comment in that Congress intentionally made Bankruptcy Code Section 541A extremely broad, right? And so it encompasses all legal and equitable interests of the debtor. And so certainly if it's not excluded, as Judge Thomas commented, why isn't it part of the bankruptcy estate? And, of course, I believe it was. And in our brief, we cited 13 reported bankruptcy decisions that addressed the same issue and said, yes, a debtor's ownership interest in a life insurance policy becomes property of the bankruptcy estate pursuant to Bankruptcy Code Section 541. Let me spin this out a bit. Let's assume for the sake of argument that that's right, that 541 includes these. Does that mean in every case in which a life insurance policy is owned by the debtor that the Chapter 7 trustee then has the power to sell that asset? In most cases, Your Honor. So in other words, you have a life insurance policy, you file bankruptcy, and the trustee says, now I've got the policy. Let me look to the secondary market. It has value. I'm going to sell it. Absolutely, Your Honor. Now, do you think that's consistent with the years of authority and the theory underlying life insurance policies and bankruptcy? I believe it is, Your Honor, and it's being done around the country now. There's other cases, and certainly in the amicus brief that was submitted, it's done all the time, as a matter of fact. And in this case, you have to look at exactly what was transferred. So Mr. Green had substantial equity in these policies, pursuant to expert testimony, well over a billion dollars, and even appellants concede they paid over $507,000 for these policies. But also what was transferred was valuable contract rights, right? And what were those? Well, the right to, again, sell those policies to someone else for maybe more than the $507,000 that they paid for them, or what they did was exercise the contractual right to change the beneficiary of those policies to themselves. And the cases that have decided this issue say those are the valuable property rights that are passed to the bankruptcy trustee in this scenario, and that's what the interest of the debtor in property would have been under Bankruptcy Code Section 548. And so with respect to the exemption argument. But doesn't that seem contrary that, I mean, that they were, as long as they kept paying the premiums, then they were supposed to be able, they could request an exemption, right? But now what you're saying is, why would anyone disclose if then they're just going to take them away, right? Well, they disclosed. They have to disclose anyway. My question, which I think is the same as Judge Callahan's, is how is that consistent with the theory that unmatured life insurance benefits are outside the scope of bankruptcy reach? Well, it's consistent in that, and this is the one area of law that I think it's fairly well settled in this circuit, is that if you have an asset and you conceal it, you waive your exemption in that asset. If you have an asset and you transfer it prior to the bankruptcy, you waive your exemption in that. And so that's the scenario we're facing here. But you seem to be putting forth that the exemption's just going to become meaningless, that the trustee's just going to take it over and sell it on the secondary market, and that doesn't seem to be what Congress intended. Well, let's take that scenario, Your Honor. And so let's say Mr. Green had been honest, and let's say he had not transferred these policies and not concealed them in his schedules and claimed an exemption in them. Well, obviously that didn't happen, but let's say it did. Okay. So California Code of Civil Procedures Section 704-10 is limited to the extent to which he can actually claim an exemption, and the loan value or the debtor's equity interest in those is not exempt. Pardon me. It's exempt up to $909,700. But that same code section in Section B says that exemption must first be applied to policies that are not before the court. And here it's undisputed that Mr. Green had other policies not before the court. And so I would say in this scenario that even if he had listed these and been honest and listed them and not transferred them, that he would not have an exemption in his policies or would be very limited compared to the actual value of these policies. Well, I'm just, I guess, but I think what we're seeing a broader, not so much about that it's fraudulent that he didn't list them, that all of that, but the broader concern is that you're asking this court to say that the trustee then, you know, could basically in all, that the exemption would be denied and that they would sell these policies on the secondary market once they're disclosed. And so then there really won't be any exemptions anymore. And so that kind of, Congress wasn't planning on that. Well, I'm not so sure that's the case, Your Honor. I think there's a strong incentive for debtors to disclose things. For one, they can go to jail if they don't. Oh, sure. But I don't think that's the question, if you don't mind me interrupting. I guess maybe I'm puzzled by your subsequent answers. I thought your position was that under 541, the life insurance policy becomes property of the estate, and in all instances then the trustee can sell it on the open market. And then in answer to Judge Callahan's question, you seem to say, well, if it had been properly disclosed, the unmatured life insurance policy would have been exempt. It would have a limited exemption, Your Honor, up to $9,700 at most. Well, and we're talking about a state law exemption, not. Correct. So how do you, do you think that the loan value of a life insurance policy under the California statute is coextensive with the market value? I do, Your Honor. And what's your best case for that? My best case scenario is that if the legislature had intended to exempt the cash surrender value of the life insurance policy, they would have said that. They intentionally said the loan value of a policy. Okay. Now, and I'm gathering by your answer that you're answering with particularity to California law. If we were in a state that did not have a similar exemption, would your answer be it's property of the estate, the trustee can sell a life insurance policy, and that's it? Yes, Your Honor. Okay. Yes, Your Honor. And so, again, this is the concept that the ownership interest and equity interest in a life insurance policy is not new. We cited 13 cases on that. And so when we look back to those old Supreme Court cases that seemed to say that bankruptcy code or the Bankruptcy Act doesn't apply to, that insurance policies don't fall within the property of the estate under the Bankruptcy Act, do you just distinguish that because it's an act, not a code? No, Your Honor. I would say that those cases did not even address whether or not there was a secondary market value for those policies. Well, there's the one case that seems to indicate that they did consider some market value. Right. And they said if that was the case, they analyzed it and said there wasn't, but it said that should pass to the trustee lest it be a refuge for fraud, which is exactly the language from that case. And the appellants are not the first to try this cash surrender value argument. It was tried in 1987 in the Enright Butcher case, which we cited, and more recently in the Enright Myers case in 2012. And those defendants came in with the exact same argument that the appellant's making here. I wasn't sure. What were you saying about what's happening in other circuits? Are there splits in the circuit, or are they handling it differently? Or are all the circuits just selling these policies in the secondary market when they're identical? Are you talking about reported decisions, or are you talking about what's kind of happening? I think you were talking general practice, weren't you? In general practice, yes. I don't think there are circuit decisions on this, are there? There are a few circuit decisions that we cited in our brief, Your Honor. We listed 13 of those, I think 11 of those. For this exact proposition? Yes, that the debtor's ownership interest in a life insurance policy is property to bankruptcy estate under Section 541. Therefore, it would be an interest of the debtor in property pursuant to Section 548. And that is regardless of whether or not that policy had cash surrender value or not, and regardless of whether or not the debtor was just the owner or the beneficiary as well. It's irrelevant. I have a question about the diligence of the trustee here. And it seems to me that there are some factual things that have to be looked at here, but I noticed that you seem to be arguing that, which I didn't find terribly persuasive, that, oh, poor, woe is me, poor trustees are usually sole practitioners, and they don't have very much time to do things and this, that, and the other, and seem to be arguing for that they should be held to a lesser standard than anyone else should be in terms of diligence. And I have a problem with that rule. I'm not saying the trustee here was or was not diligent, but I have a problem with if you take on a job that then you can say, well, I'm a sole practitioner and you're not paying me very much money, so I don't have to be, you know, like I can be less diligent than, say, if I were a partner in MOFO. Absolutely, Your Honor. And I think what Your Honor is referring to is more of what was presented in the amicus brief on the NABT. Yeah, yeah. That was pretty whiny. I usually like amicus briefs, but that was, you know, I mean, it seems to me, you know, when you set a standard, what's good for the goose is good for the gander, and if you take on a job, you know, we can't have a sliding scale of diligence relative to, you know, if you take on a job, you either have the time to do it right or not. Well, I think it's instructive to look at the reported decisions on this issue, and the cases that address this issue come in typically two types, right? They have the concealment cases and the non-concealment cases. And the appellants have relied. Well, concealment makes it harder for a trustee, whether you work for a big, big law or whether you're a sole practitioner. So any trustee in that situation can make different arguments where, you know, things are being thrown. But arguing for a different standard depending on how much money you make, that's problematic. And I certainly didn't make that argument, Your Honor. And I believe so there's a certain level of cases that say that we cited five and one circuit level case from the 11th Circuit that say it's enough that if the debtor conceals this transfer and conceals this asset, that that's enough, that the statute is equitably told, regardless of whether or not the defendants participated in that fraud. That's from the 11th Circuit case. And also this circuit's In re Olson case from 1994 in which a debtor didn't disclose an asset, transferred it post-petition, trustee didn't find out about it for two years, and the doctrine of equitable tolling was addressed. And in that case, and in this circuit's case, the court only focused on what the debtor did, concealed the asset, and there was no discussion of whether or not or any requirement upon the defendant as to whether or not they participated in the fraud. And so the cases that have looked at this, there's the In re International Administrative Services case, and the 11th Circuit essentially relied on the other bankruptcy cases that have addressed this very same issue, and also the Supreme Court's Holmbrecht decision. And the standard that the 11th Circuit adopted bears recitation. So the trustee must demonstrate either that he acted with due diligence to discover the negligently concealed fraud or that one of the parties involved in the alleged fraud took positive steps to conceal the transfers. The statute of limitations in the former situation begins when the trustee either acquired or should have acquired actual knowledge of the existence of the cause of action. In the latter scenario, however, overlooks the trustee's diligence, and the statute begins to run only when the trustee gains actual knowledge. And the 11th Circuit went on to state that the identity of the party concealing the fraud is immaterial. In addition to this 11th Circuit decision, we've cited a number of bankruptcy cases that have addressed the same issue and have come to the same conclusion. Is there anything that I should take away from the fact that the bankruptcy judge just basically didn't say anything? I think the fact that he was on the verge of retirement, maybe, and this was one of his last cases. That's my only assessment, Your Honor. I think this was one of the last cases he decided, and then he retired. That's the only thing I can think of, Your Honor. But we don't really have any findings, right? We have no findings. And we don't even know whether or not he made his ruling based on equitable tolling or whether or not it was on whether these life insurance property were property of the bankruptcy estate. Well, he wanted to get his work done. Pardon me? He wanted to get his work done. Well, yes, absolutely. So back to my earlier question. I mean, in terms of a Circuit Court case, you've got a First Circuit case, but that's it as far as I can see. I'm talking about a post-code or post-act bankruptcy code case that says that a market value of a life insurance policy is property of the estate. I'm talking about a Court of Appeals case. Court of Appeals cases? Because when Judge Canlan is talking about Circuit conflict, we don't count bankruptcy courts or district courts in a conflict. Yes, that's correct. There's the estate of Lellick, 811 Bed Second, 186 from the Third Circuit from 1987. It was a Circuit-level case. But otherwise, it's bankruptcy courts that have considered this. Okay. Thanks for the clarification. Any further questions from the panel? Thank you for your argument. We'll hear a rebuttal. Your Honor, the appellee cites 13 reported cases on this issue of whether life insurance is property of the estate. And every single one of those cases at issue was either the debtor had a beneficial interest in a policy or the policy had a cash surrender value. Both types of situations are different. They involve different property interests. They involve the chance of the debtor in every case obtaining funds from the policy held, either as a beneficiary or when he tenders the policy to the insurance company. So actual funds will be coming in either case to the debtor. In the typical term life insurance policy, no funds are going to be coming to the debtor. It's a contract with a third party to make a payment to a beneficiary, not the debtor, upon the beneficiary's death. Further, all the cases cited, with one exception, are not under California law. California law is different from many states in that it makes 704-100A makes a policy, term policy, exempt except for loan value, which is a term of art, the same as cash surrender value, without making a claim. So you would disagree that the term loan is coextensive with market value? Yes, Your Honor. And in the one California case cited, it's Heaton v. Miller, 141 Callip, 3rd 169. There, the court held creditors could reach death benefits of a policy where the debtor was the original beneficiary. If the court has no further questions, I'd like to just turn in very briefly to the issue of equitable tolling and just point the court to the case. The Supreme Court decision of Pace v. Guglielmo, where the U.S. Supreme Court in 2005 held the proponent of equitable tolling must establish two elements. One, diligent pursuit of rights, and two, extraordinary circumstances preventing timely filing a complaint. And I would submit here that the appellee's evidence did not rise anywhere near the level of extraordinary circumstances to prevent her filing of an amended complaint naming for the first time appellees. Thank you, counsel. Thank you both for your arguments this morning. It's an interesting case, and the case will be submitted for decision.
judges: Singleton, Thomas, Callahan